# Exhibit 1

Electronically FILED by Superior Court of California, County of Los Angeles on 12/29/2022 11:12 PM Sherri R. Carter, Executive Officer/Clerk of Court, by Y. Tarasyuk, Deputy Clerk
22STCV40889

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Christopher Lui

W. ANTHONY WILLOUGHBY, ESQ. SBN 137503
ANTHONY WILLOUGHBY II, ESQ. SBN 314832
WILLOUGHBY & ASSOCIATES
200 Corporate Pointe, Suite 495
Culver City, CA 90230
Tel.: 310.642.0600
Fax.: 310.642.4710

Attorneys for Plaintiff,
DENNIS ASHLEY JR. and DENNIS ASHLEY III

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| DENNIS ASHLEY JR, an individual; and<br><br>DENNIS ASHLEY III, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a public entity; and DOES 1 TO 50, inclusive,<br><br>Defendants. | 22STCV40889<br>**COMPLAINT FOR DAMAGES**<br><br>1. False Arrest<br>2. Intentional Infliction of Emotional Distress<br>3. Negligent Infliction of Emotional Distress<br>4. Conversion<br>5. Intentional Misrepresentation<br>6. Violation of the Bane Act<br>7. Civil Rights – Discrimination<br>8. Civil Rights – Unreasonable Search and Seizure |

COMES NOW DENNIS ASHLEY JR. and DENNIS ASHLEY III (hereafter together as "Plaintiffs"), and alleges against the CITY OF LOS ANGELES, (hereinafter referred to as "CITY") and DOES 1 through 50 (together hereinafter referred to collectively as "Defendants"), this Complaint for damages stemming from the unlawful actions of CITY in violation of Plaintiffs' rights.

COMPLAINT FOR DAMAGES

Exhibit 1 - Page 8

## THE PARTIES

1. DENNIS ASHLEY JR is and at all times mentioned herein, a resident of the County of Los Angeles, State of California.

2. DENNIS ASHLEY III is and at all times mentioned herein, a resident of the County of Los Angeles, State of California.

3. CITY is organized and exists under the laws of the State of California. CITY acted through its agents, employees, and servants, who were the policymakers and through DOES 1 through 50.

4. At all times referred to herein, DOES 1 through 50 acted under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of CITY.

5. Plaintiffs sue Defendant DOES 1 through 50 each in their individual and representative capacities. DOES 1 through 50 are sued herein under fictitious names. Their true names and identities are unknown to Plaintiffs. When their true names are ascertained, Plaintiffs will amend this Complaint by inserting their names herein.

6. Plaintiffs are informed and believe and thereon allege that at all times relevant to this Complaint, DOES 1 through 50 were employees of Defendant CITY. DOES 1 through 50, in doing the acts herein described and referred to, were acting: (1) in their capacity as agents, servants, and employees of Defendant CITY; (2) under the direction and control of Defendant CITY; and (3) pursuant to either official policies, the custom, practice, and usage of Defendant CITY.

7. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages herein alleged were proximately caused by those Defendants.

## JURISDICTIONAL STATEMENT

8. This action is brought pursuant to California Civil Code § 52.1 ("Cal. Civ. Code"); California Constitution Article 1 §§ 1, 7(a), and 17; California Government Code §§ 815.2 and 820 ("Cal. Gov. Code").

9. On or about January 11, 2022, Plaintiffs were arrested.

10. Per Cal. Gov. Code § 945.3, no person with pending criminal charges may bring a civil action against a peace officer or public entity for damages based on the conduct of the peace officers relating to the office of the criminal charges. Any applicable statute of limitations for filing and prosecuting such actions are tolled during that time.

11. The People of the State of California did not and have not filed the criminal charges against Plaintiffs as of the filing of this Complaint.

12. Plaintiffs filed and served a timely claim for damages with CITY which was identified by CITY as claim number C22-20476. CITY rejected said claim on June 30, 2022.

13. Plaintiffs make this timely complaint within six months of the rejection of the aforementioned claim.

14. Plaintiffs file this Complaint in the Stanley Mosk Courthouse located at 111 North Hill Street, Los Angeles, CA 90012 because this is the central court for the county in which the conduct complained of occurred.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15. The Legislature for the State of California established and enacted the California Cannabis Equity Act of 2018. The bill authorized the Bureau of Cannabis Control, upon request by a local jurisdiction, to provide technical assistance, to a local equity program that helps local equity applicants or local equity cannabis licensees.

16. The bill, funded by the Budget Act of 2019, required the local jurisdiction that receives funds pursuant to this act to **assist local equity licensees in that local jurisdiction to gain entry to, and to successfully operate in, the state's regulated cannabis marketplace.**

17. The program was to be designed to assist households with a household income less than or equal to 60 percent of the area median income for the applicable local jurisdiction. Bus. & Prof. Code, § 26249

18. Pursuant to the foregoing, CITY applied for and received approximately $7.8

-3-

COMPLAINT FOR DAMAGES

Exhibit 1 - Page 10

million in accordance with the Cannabis Equity Act of 2018.

19. CITY thereafter had a duty to, and advertised that it would, **provide direct assistance to equity applicants and equity licensees** in the Social Equity Program.

20. CITY advertised and thereby promised that the Los Angeles Department of Cannabis Regulation (hereinafter "DCR") would regularly engage with applicants and licensees.

21. A "local equity applicant" means an applicant who has submitted, or will submit, an application to a local jurisdiction to engage in commercial cannabis activity within the jurisdictional boundaries of that jurisdiction and who meets the requirements of that jurisdiction's local equity program. Bus. & Prof. Code, § 26240.

22. A "local equity licensee" means a person who has obtained a license from a local jurisdiction to engage in commercial cannabis activity within the jurisdictional boundaries of that jurisdiction and who meets the requirements of that jurisdiction's local equity program. Bus. & Prof. Code, § 26240.

23. Plaintiffs applied to the social equity program established by CITY, thereby making Plaintiffs "local equity applicants" pursuant to Bus. & Prof. Code, § 26240.

24. Plaintiffs applied for a retail license.

25. The application for the retail license was provided to and handled primarily by CITY through DCR.

26. After applying for the social equity program Plaintiffs were subjected to hardships which demonstrated that the process was less than equitable.

27. CITY often changed the rules and moved the goalposts to be met by Plaintiffs and other applicants. Often, these rule changes occurred within months of each other at a substantial cost to Plaintiffs and other applicants.

28. In one such example, CITY informed Plaintiffs and other applicants that they must secure a location to operate before their application would be processed once the application portal was opened.

29. Due to this, Plaintiffs and other applicants were forced to enter into lease

-4-

agreements.

30. However, upon opening the application portal, Plaintiffs and other applicants were told that they did not need a location to apply. This resulted in Plaintiffs and other applicants needlessly incurring multiple months of lease payments and financial obligations.

31. Through this act and the harm caused by forcing Plaintiffs to needlessly incur these obligations, CITY breached the voluntary duty CITY undertook provide direct assistance to equity applicants and equity licensees in the Social Equity Program by assisting local equity licensees in CITY to gain entry to, and to successfully operate in, the state's regulated cannabis marketplace.

32. When CITY finally acted to issue multiple retail licenses, CITY issued a substantial amount of the licenses to a single corporate entity thereby further prejudicing Plaintiffs and many of the other equity applicants.

33. In issuing licenses in this manner, CITY acted primarily for a purpose other than to provide direct assistance to equity applicants and equity licensees in the Social Equity Program by assisting local equity licensees in CITY to gain entry to, and to successfully operate in, the state's regulated cannabis marketplace.

34. Plaintiffs are informed and believe and thereon allege that the selection process for retail licensing was largely based on race, and primarily for the purpose of harming those individuals in the Social Equity Program who were or appeared to be black or African American.

35. Having been denied a retail license due to the racist policies of CITY, Plaintiffs applied for a license for delivery of cannabis within the Social Equity Program.

36. The application for the delivery license was provided to and handled primarily by CITY through DCR.

37. Thereafter, Plaintiffs engaged with CITY, through DCR, in a multi-step process that included multiple inspections by CITY from several departments including but not limited to the Department of Building & Safety, the Fire Department, and DCR.

38. Thereafter, and on or about October of 2020, Plaintiffs were notified that they had

been temporarily approved pending approval of their license by the State of California.

39. Plaintiffs are informed and believe and thereon allege that a temporary license was issued by CITY through DCR.

40. Plaintiffs are informed and believe and thereon allege that the State of California will not issue a license unless and until an applicant is approved by the local jurisdiction.

41. Plaintiffs are informed and believe and thereon allege that CITY misrepresented the approval status of Plaintiffs license to Plaintiffs and the State of California, knowing that the State of California and Plaintiffs would rely on such misrepresentation in the state license application process.

42. Due to CITY issuing Plaintiffs' temporary license, the State of California approved Plaintiffs delivery license.

43. CITY's actions were relied on by Plaintiffs who were misled to believe that they were allowed to begin operations of their entity in full.

44. On November 1, 2021, Plaintiffs began operating their business located in the City of Los Angeles ("Subject Premises")

45. Plaintiffs began participating in the cannabis marketplace by ordering State of California approved cannabis through the approved cannabis marketplace using the State approved license provided to Plaintiffs.

46. At the time Plaintiffs began operating, CITY had indicated to Plaintiffs that all fees required had been paid to CITY.

47. At the time Plaintiffs began operating, Plaintiffs had expended over $500,000.00 to be involved in CITY's so called equity program.

48. Plaintiffs prominently displayed their California State License number outside and inside the Subject Premises.

49. On January 11, 2022, Plaintiffs were present at Subject Premises tending to the business.

50. At approximately 1:25 pm, there were loud sounds emanating from the front door.

51. At that moment, several law enforcement officers broke into the Subject Premises with guns drawn.

52. Fortunately, Plaintiffs were behind bullet proof glass to protect them against unlawful intruders.

53. DENNIS ASHLEY JR recognized the individuals as law enforcement officers from the CITY and came around from behind the glass to see why the CITY's officers had charged in with guns drawn.

54. As DENNIS ASHLEY JR approached the officers, the CITY's officers began to yell and scream at him.

55. DENNIS ASHLEY JR, fearing for the safety of himself and those employed on the Subject Premises, followed the instructions of the CITY's officers as they continued to aim their guns in his direction. DENNIS ASHLEY JR also directed the other individuals at the Subject Premises to comply out of fear that harm would come to them if they did not.

56. DENNIS ASHLEY III, also fearing for the safety of himself and those employed on the Subject Premises, followed the instructions of the CITY's officers as they continued to aim their guns in his direction. DENNIS ASHLEY JR also directed the other individuals at the Subject Premises to comply out of fear that harm would come to them if they did not.

57. The CITY's officers physically grabbed and handcuffed Plaintiffs and thereafter removed Plaintiffs from the Subject Premises.

58. DENNIS ASHLEY JR asked the officers why this was all happening and the reason why Plaintiffs were being detained at gunpoint. In response, the CITY's officers informed DENNIS ASHLEY JR that this was happening because Plaintiffs were illegally selling cannabis.

59. DENNIS ASHLEY JR informed the CITY's officers that the licensing information for the business was on the wall inside and on the billboard above the building.

60. In response, the CITY's officers stated that they had done research on the location, that a full investigation had been performed, and CITY knew Plaintiffs' business to be illegal.

-7-

61. A CITY officer then asked DENNIS ASHLEY JR for the combination to the safe for the business. In response, DENNIS ASHLEY JR asked for a copy of the warrant and to speak with his attorney.

62. A CITY officer walked away and was gone for approximately five minutes before returning with what the CITY officer claimed was a warrant.

63. Upon seeing the document that the CITY's officer claimed was a warrant, DENNIS ASHLEY JR, repeated his request to speak with his attorney.

64. The CITY's officer then threatened DENNIS ASHLEY JR. The CITY officer stated that with or without the combination, the CITY's officers would get into the safe. The CITY's officer stated that the CITY's officers would damage Plaintiffs' property if DENNIS ASHLEY JR did not provide the CITY's officers with the combination.

65. DENNIS ASHLEY JR began to repeated request to speak to an attorney prior to giving the combination to the safe. In response, CITY's officers denied DENNIS ASHLEY JR his right to counsel and threaten to immediately destroy the Subject Premises.

66. Out of fear for his safety, the safety of the others working at the Subject Premises, and over the destruction of property, DENNIS ASHLEY JR gave the CITY's officer the combination.

67. Thereafter, the CITY's officers removed DENNIS ASHLEY JR from the location along with DENNIS ASHLEY III.

68. Plaintiffs were taken to the CITY's police station at approximately 2:30 pm.

69. DENNIS ASHLEY III remained at the CITY's police station unable to leave and held against his will until 1:30 am, at which point CITY's officers finally released DENNIS ASHLEY III.

70. DENNIS ASHLEY JR remained at the CITY's police station unable to leave and held against their will until 4:30 am, at which point CITY's officers finally released DENNIS ASHLEY JR.

71. Upon returning to the Subject Premises, Plaintiffs found that CITY had stolen call

-8-

COMPLAINT FOR DAMAGES

**Exhibit 1 - Page 15**

the cannabis product out of the packaging, destroyed the furniture and displays at the Subject Premises, stolen the internet router, and emptied the safe.

72. Approximately $60,000.00 in cannabis product was stolen by CITY's officers.

73. Approximately $70,000.00 in furniture and products were destroyed by CITY's officers.

74. Over two thousands of dollars in cash was taken from Plaintiffs' safe along with all other personal and business items located therein.

75. To underscore their knowledge of the illegality of their act, CITY's officers rendered all security cameras at the Subject Premises inoperable and turned the cameras so that they would not be able to record the actions of CITY's officers as they destroyed, ransacked, and committed their theft.

76. Plaintiffs are informed and believed and thereon allege that CITY did not warn Plaintiffs or communicate to Plaintiffs in any way that they were not able to operate a business using the cannabis delivery license.

77. Plaintiffs are informed and believed and thereon allege that CITY did not warn Plaintiffs or communicate to Plaintiffs in any way that the operation of a business using the cannabis delivery license provided by the State of California was illegal.

78. Plaintiffs are informed and believed and thereon allege that CITY did not notify Plaintiffs of a failure to comply with any provision of Plaintiffs' cannabis delivery license.

79. Plaintiffs are informed and believe and thereon allege that CITY acted in a manner that was crude, bigoted, and aimed to harm the interests of those identifying as or appearing to the CITY to be blacks and/or African Americans.

80. Plaintiffs are informed and believe and thereon allege that CITY acted in a manner that intentionally misrepresented the purpose of the CITY's equity program such that CITY could collect monies from applicants and licensees without any intent on assisting said applicants and licensees with participating in the cannabis marketplace.

81. Plaintiffs are informed and believe and thereon allege that CITY targeted known

licensees and applicants for raids to seize property and cash to which CITY knew it had no rightful claim.

82. Plaintiffs are informed and believe and thereon allege that CITY acted in a manner that was based on racial animosity hose identifying as or appearing to the CITY to be blacks and/or African Americans.

## FIRST CAUSE OF ACTION

**(False Arrest in violation of the California Constitution Article 1 §§ 1, 7)**

83. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 82 of this Complaint as though fully set forth herein.

84. Plaintiffs are informed and believe, and thereupon alleges, that the defendants herein caused and did falsely arrest Plaintiffs.

85. Defendants were actively involved in causing Plaintiffs to be arrested and humiliated. Defendants knew or should have known that there was no probable cause to arrest Plaintiffs.

86. No reasonable person in the defendants' circumstances with the information available to CITY and the other defendants at the time of the arrest would have believed that there were grounds for causing Plaintiffs to be arrested.

87. Defendants acted primarily for a purpose other than to bring Plaintiffs to justice.

88. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

89. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

90. Defendants conduct and that of its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

91. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 90 of this Complaint as though fully set forth herein.

92. Defendants conduct was outrageous.

93. Defendants conduct was intended to cause Plaintiffs to suffer emotional distress, or Defendants acted with reckless disregard for the probability that Plaintiffs would suffer emotions distress by and through the actions of the defendants.

94. Defendants were actively involved in causing Plaintiffs to be arrested and humiliated. Defendants knew or should have known that there was no probable cause to arrest Plaintiffs.

95. No reasonable person in the defendants' circumstances with the information available to CITY and the other defendants at the time of the arrest would have believed that there were grounds for causing Plaintiffs to be arrested.

96. Defendants acted primarily for a purpose other than to bring Plaintiffs to justice.

97. Defendants suffered severe emotional distress.

98. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

99. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

100. Defendants conduct and that of its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

## THIRD CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

101. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1

-11-

through 100 of this Complaint as though fully set forth herein.

102. Plaintiffs allege that the conduct of defendants as enumerated herein caused them to suffer serious emotional distress.

103. Defendants were actively involved in causing Plaintiffs to be arrested and humiliated. Defendants knew or should have known that there was no probable cause to arrest Plaintiffs.

104. No reasonable person in the defendants' circumstances with the information available to CITY and the other defendants at the time of the arrest would have believed that there were grounds for causing Plaintiffs to be arrested.

105. Defendants acted primarily for a purpose other than to bring Plaintiffs to justice.

106. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

107. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

108. Defendants conduct and that of its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

### FOURTH CAUSE OF ACTION
### (CONVERSION)

109. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 108 of this Complaint as though fully set forth herein.

110. Plaintiffs had the right to possession legal cannabis product and furniture within the lawful cannabis business pursuant to a valid State of California business license.

111. Defendants substantially interfered with Plaintiffs' right by unlawfully taking possession of and destroying the cannabis related property of Plaintiffs.

112. Plaintiffs did not consent to the unlawful taking and destroying of the cannabis

product.

113. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

114. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

115. Defendants conduct and that of its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

## FIFTH CAUSE OF ACTION

## (INTENTIONAL MISREPRESENTATION)

116. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 115 of this Complaint as though fully set forth herein.

117. Defendants represented to Plaintiffs that Plaintiffs were able to operate their cannabis business lawfully within the jurisdiction of the City of Los Angeles.

118. Plaintiffs believed this to be true.

119. Defendants' representation was false.

120. Defendants knew that the representation was false when they made it, or recklessly and without regard for its truth made the representation to Plaintiffs.

121. Defendants intended that Plaintiffs rely on the representation.

122. Plaintiffs reasonably relied on the representation to begin operation of their cannabis business.

123. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

124. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

-13-

COMPLAINT FOR DAMAGES

**Exhibit 1 - Page 20**

125. Defendants conduct and that of its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

### SIXTH CAUSE OF ACTION

### (BANE ACT)

126. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 125 of this Complaint as though fully set forth herein.

127. Defendants threatened, intimidated, and coerced Plaintiffs to cause Plaintiffs to reasonably believe that if they exercised their right to speak to an attorney without giving information to Defendants, that Defendants would commit violence against Plaintiffs and Plaintiffs property.

128. Defendants threatened, intimidated, and coerced Plaintiffs to cause Plaintiffs to reasonably believe that if they exercised their right to be free of unreasonable search and seizure, that Defendants would commit violence against Plaintiffs and Plaintiffs property.

129. Defendants, having guns drawn and riot gear, had the apparent ability to carry out the threats.

130. Defendant had already acted violently against Plaintiffs by unlawfully by unlawfully threatening the peaceful Plaintiffs through the use of firearms aimed at Plaintiffs as a tool to cause fear in the otherwise law-abiding Plaintiffs.

131. Defendants intended to deprive Plaintiffs of their right to counsel and their right to be free of unreasonable search and seizure.

132. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

133. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

134. Defendants conduct and that of its agents/employees as described herein was

-14-

malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

### SEVENTH CAUSE OF ACTION

### (Violation of Federal Civil Rights - Discrimination)

135. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 134 of this Complaint as though fully set forth herein.

136. Defendants intentionally or recklessly acted to prevent Plaintiffs from fully participating in the social equity cannabis programs in the State of California.

137. Defendants were acting or purporting to act in the performance of their official duties as part of a local government agency and on behalf of CITY.

138. Defendants' conduct violated Plaintiffs' right to be free from discrimination based on ethnicity and the color of their skin.

139. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

140. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

141. Defendants conduct and that of its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

### EIGHTH CAUSE OF ACTION

### (Violation of Federal Civil Rights – Fourth Amendment)

142. Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 141 of this Complaint as though fully set forth herein.

143. Defendants intentionally or recklessly acted to prevent Plaintiffs from fully participating in the social equity cannabis programs in the State of California.

144. Defendants were acting or purporting to act in the performance of their official

-15-

duties as part of a local government agency and on behalf of CITY.

145. Defendants' conduct violated Plaintiffs' right to be free from unreasonable search and seizure.

146. As a direct and proximate result of the defendants' conduct, Plaintiffs have suffered serious harm, including lost earnings, humiliation, embarrassment, emotional distress, and pain and suffering.

147. Defendants, with full knowledge of the wrongful nature of the arrest of Plaintiffs continued their unlawful conduct which was a substantial factor in causing Plaintiffs' harm.

148. Defendants conduct and that of its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiffs' rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

1. General damages according to proof;
2. Special damages according to proof against DOES 1 through 50, only;
3. Attorney's fees;
4. For interest as allowed by law;
5. Costs of suit incurred herein; and
6. For such other and further relief as the Court may deem proper

//
//
//
//
//
//
//
//

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury.

Dated: December 29, 2022

Respectfully submitted,

WILLOUGHBY & ASSOCIATES

By: _____
ANTHONY WILLOUGHBY, ESQ.
Attorney for Plaintiffs

-17-

COMPLAINT FOR DAMAGES

Exhibit 1 - Page 24